United States District Court
Southern District of Texas
**ENTERED**
January 13, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **ROSA RAMIREZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:22-CV-00029** |
| | § | |
| **PHI HEALTH, LLC D/B/A PHI** | § | |
| **AIR MEDICAL, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Rosa Ramirez suffers from a neurological disease known as Reflex Sympathetic Dystrophy ("RSD"), a condition that causes discoloration, inflammation, and occasional pain in her limbs. Despite this condition, Ramirez became a flight nurse and worked for Defendant PHI Health, LLC ("PHI") for three years until she was fired. Ramirez filed suit alleging that PHI fired her (1) because of her disability and (2) in retaliation for both accusing her supervisor of discrimination and requesting medical leave on several occasions. PHI disputes these allegations insisting that Ramirez was fired for poor performance and disruptive behavior.

Pending before the Court is PHI's Motion for Summary Judgment. (Dkt. No. 18). For the reasons below, PHI's Motion is **GRANTED**.

## I.    BACKGROUND[1]

Defendant PHI is an emergency airlift company providing rapid-medical-transportation services.  (Dkt. No. 18-2 at 5).  PHI offers its services via eleven bases throughout Texas.  (Dkt. No. 18-22 at 9).

In February 2017, Ramirez began working as a flight nurse at PHI's base in Ellington, Texas.  (Dkt. No. 18-2 at 5).  PHI hired Ramirez knowing that she suffered from RSD and experienced "discoloration or inflammation of [her] limb[s]" and "sometimes pain."  (*Id.* at 9).  As a flight nurse, Ramirez provided critical care to patients.  (*Id.* at 5).  For each patient, she was required to prepare a chart that described the patient's condition and treatment while under PHI care.  (*Id.* at 5–6).

### A.    RAMIREZ'S MEDICAL-LEAVE REQUESTS

Towards the end of her first year at PHI, Ramirez made her first request for medical leave.  (*Id.* at 10).  She asked for "three or four weeks" of leave so that she could undergo, and recover from, an RSD-related procedure.  (*Id.*).  PHI granted the request.  (*Id.*).  Ramirez returned from leave in early 2018 and relocated from Ellington, Texas, to PHI's base in Victoria, Texas, where she remained for the rest of her career.  (*Id.* at 10–11).

After about a year in Victoria, Ramirez requested medical leave for another surgery—this time for six to eight weeks.  (*Id.* at 13).  Again, PHI granted Ramirez's

---

[1]    Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

request. (*Id.* at 13–14). Ramirez returned from her second medical leave in April 2019. (*Id.* at 14).

Five months later, in September 2019, Ramirez informed PHI that she again needed medical leave, (Dkt. No. 18-15 at 3), for another RSD-related procedure, (Dkt. No. 18-6 at 3–4). PHI, again, granted the request. (Dkt. No. 18-15 at 3). Ramirez began her leave on September 22, 2019, and did not return to PHI until January 10, 2020—roughly sixteen weeks later. (*Id.*).

By the time Ramirez returned to PHI in January 2020, another employee—Marian Moon—had been promoted and became Ramirez's direct supervisor. (Dkt. No. 18-2 at 17). Nearly a month after returning to PHI, Ramirez met with Moon to discuss Ramirez's recent performance. (*Id.* at 18). Moon used the meeting as a warning and asked Ramirez to improve in several ways. (*Id.*). Moon particularly stressed Ramirez's failure to complete charts on time and completed a "Coaching and Mentoring Form" to document the discussion. (*Id.*).

### B.    THE DATA-DELETION INCIDENT

In July 2020, PHI assigned Ramirez and Bryan Jackson, a flight paramedic, to transport a patient from a hospital in Victoria, Texas. (*Id.* at 22). Ramirez was tasked with collecting and organizing the vital-sign data collected by PHI monitors, which would be used in Ramirez's patient chart. (*Id.* at 23). But when Ramirez tried to extract the data, she accidentally deleted it from PHI's system. (*Id.*).

Ramirez tried to hide the mistake. Ramirez explained via email that "we were unable to retrieve monitor data because [the] cardiac monitor was not turned on and no

vital signs were able to be obtained."  (Dkt. No. 18-9 at 2).  Jackson later reported to PHI that Ramirez's story was misleading.  (Dkt. No. 18-21 at 3).

When PHI learned that Ramirez had lied about the lost patient data, Moon and other PHI leaders held a second meeting to discuss Ramirez's performance.  (Dkt. No. 18-2 at 18, 22).  The leaders issued a final written warning to Ramirez, citing excessive absences, recurring charting issues, and the data-deletion incident.  (Dkt. No. 18-8 at 2).

Less than a month after the final warning, Moon issued Ramirez another Coaching and Mentoring Form for failing to complete a patient chart on time.  (Dkt. No. 18-11 at 2).  One week later, Moon filed a third Coaching and Mentoring Form for the same reason.  (Dkt. No. 18-12 at 2).  At this point, Ramirez had accrued three Coaching and Mentoring Forms and a final written warning from PHI leadership, all in less than a year.

### C.   RAMIREZ'S REPORT OF HARASSMENT AND DISCRIMINATION

Right after receiving her third Coaching and Mentoring form, Ramirez called PHI's human-resources officer to report Moon for discrimination and harassment.  (Dkt. No. 18-10 at 3–5).  In response, PHI initiated an investigation but could not substantiate any of Ramirez's allegations.  (Dkt. No. 18-16 at 2).  On the contrary, the investigation concluded that *Ramirez* created a hostile work environment by retaliating against Moon. (*Id.*).

PHI's investigators had interviewed Mr. Ashley Malik, a pilot for the base in Victoria, Texas.  (*Id.*).  According to Malik, Ramirez told him that she planned to contact Moon's former employer to "dig up dirt" on her and "get her."  (Dkt. No. 18-14 at 6).  When asked about Malik's allegation, Ramirez admitted to investigators that she had

4

called Moon's previous employer. (*Id.* at 7). Malik also told investigators that Ramirez also had issues with Jackson—the flight paramedic who informed PHI leadership about the data-deletion incident. (Dkt. No. 18-15 at 4). Malik explained that Ramirez inquired about Jackson's home address so that she could sue him for slander. (*Id.*).

### D.    RAMIREZ'S TERMINATION

The PHI investigators concluded their report by recommending that Ramirez be fired. (*Id.*). They submitted their report to Maria Costella, the Vice President of Human Resources at PHI. (*Id.*). Costella agreed and, after receiving approval from PHI's President, fired Ramirez in September 2020. (*Id.*). Costella wrote a letter for Ramirez, outlining PHI's reasons for the termination. (Dkt. No. 18-13 at 2). She explained that PHI's decision was largely attributable to the reports that—even after her final warning—Ramirez carried out vendettas against both Jackson and Moon. (*Id.*).

Ramirez sued PHI in August 2022. (Dkt. No. 1). PHI now moves for summary judgment, (Dkt. No. 18), arguing that Ramirez's claims fail as a matter of law.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.

2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "'go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.   DISCUSSION

Ramirez brings three claims against PHI: (1) retaliation under the Family and Medical Leave Act ("FMLA"), (2) disability discrimination under the Americans with Disabilities Act ("ADA"), and (3) retaliation under the ADA. (Dkt. No. 5 at 8–10). PHI moves for summary judgment on all claims. (Dkt. No. 18 at 6).

### A.   FMLA RETALIATION

PHI first argues that Ramirez's FMLA claim fails because she is not an eligible employee under the FMLA. (*Id.* at 12). Ramirez does not contest employee status but instead argues that PHI is equitably estopped from making this argument. (Dkt. No. 21 at 24–26).

### 1.   Ramirez Is Not an "Eligible Employee" Under the FMLA

"The Family and Medical Leave Act of 1993 entitles *eligible* employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 353 (5th Cir. 2006) (emphasis added). But the Act does not apply to "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees

if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). In the Fifth Circuit, this numerosity requirement "is a substantive ingredient of a plaintiff's claim for relief, not a jurisdictional limitation." *Minard*, 447 F.3d at 356.

Ramirez is not an "eligible employee" under the FMLA because PHI does not meet the numerosity requirement. PHI has submitted summary-judgment evidence showing that its location in Victoria, Texas, where Ramirez worked, employed fewer than 20 employees during her tenure. (Dkt. No. 18-15 at 3). And the only other base within 75 miles—in Columbus, Texas—also employed fewer than 20 individuals during the relevant timeframe. (*Id.*). So, at most, PHI had 40 employees at or within 75 miles of Ramirez's worksite. In light of this evidence, and with no response from Ramirez to this point, the Court finds that Ramirez has failed to establish a genuine issue of material fact as to whether she is an "eligible employee" under the FMLA.

### 2.   PHI Is Not Equitably Estopped from Denying Ramirez FMLA Protections

Despite this, Ramirez argues that PHI is equitably estopped from asserting that she is not an eligible employee. (Dkt. No. 21 at 24–26). In support, Ramirez relies on *Minard v. ITC Deltacom Communications,* where the Fifth Circuit articulated an estoppel test for employees who were incorrectly classified as an "eligible employee" under the FMLA by their employer. 447 F.3d at 359. The *Minard* Court explained that

> an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may

> be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Id.* In light of *Minard*, plaintiffs who are not eligible employees can raise a fact issue as to equitable estoppel by presenting evidence that "(1) the employer made 'a definite but erroneous representation' that the employee is eligible and entitled to leave; (2) the employer 'has reason to believe that the employee will rely upon' the representation; and (3) 'the employee reasonably relies on that representation and takes action thereon to her detriment.'" *Sprague v. Ed's Precision Mfg., LLC*, 548 F.Supp.3d 627, 635 (S.D. Tex. 2021) (quoting *Minard*, 447 F.3d at 359).

Ramirez contends that because PHI told her she was FMLA eligible, PHI is estopped from denying it now. (Dkt. No. 21 at 25). She asserts that PHI deemed her eligible each time she requested FMLA leave. (*Id.*). In support, she references two medical-leave forms sent to her by PHI managers. (*Id.*) (citing Dkt. No. 21-16 at 2–5).

In response, PHI argues that Ramirez cannot rely on equitable estoppel because she has not shown its third element: detrimental reliance on PHI's alleged misrepresentation of her FMLA eligibility. (Dkt. No. 26 at 3). PHI asserts that merely taking medical leave is insufficient to show reliance; Ramirez must instead demonstrate that "she would *not* have otherwise taken the available leave but for the characterization that it was *FMLA* leave." (*Id.*) (emphasis in original) (citing *Dennis v. St. Tammany Par. Hosp. Serv. Dist. No. 1*, No. 2:16-CV-01781, 2017 WL 2470874, at * 4 (E.D. La. Apr. 26, 2017)). PHI argues that, like the plaintiff in Dennis, Ramirez had no choice but to take leave for her surgery and would have done so regardless of PHI's representations, as her surgery

was necessary regardless of FMLA eligibility. (*Id.*) (citing *Dennis*, 2017 WL 2470874, at *4). PHI therefore urges that because Ramirez has not proven detrimental reliance on PHI's misrepresentation, PHI is not equitably estopped as a matter of law. (*Id.*).

The Court agrees with PHI. To satisfy the *Minard* standard, employees must *actually* rely on their employer's misrepresentation. *See Minard*, 447 F.3d at 359. Employees must show that they would not have taken FMLA leave but for the employer's misrepresentation. *See id.* For example, the Fifth Circuit in *Minard* found that the plaintiff could prove reliance by showing that she would not have taken medical leave if her employer had correctly informed her that she was ineligible under the FMLA. *Id.* And since *Minard*, courts have routinely required that showing. *See, e.g., Landreneau v. Gorczynski*, No. 4:07-CV-02144, 2009 WL 151580, at *5–6 (S.D. Tex. Jan. 22, 2009) (dismissing FMLA claim where the "Plaintiff . . . provided no evidence that he relied on his eligibility for FMLA leave when determining when to return to work"); *Durose v. Grand Casino of Miss. Inc.*, 251 F.App'x 886, 889–90 (5th Cir. 2007) (per curiam) (rejecting an equitable-estoppel argument where the plaintiff presented no evidence that she detrimentally relied on the employer's representations).

The record shows that Ramirez would have taken medical leave with or without FMLA protections. Ramirez testified that her medical condition became so severe that "[she] had to be away from [her] job duties at that point until" she could receive surgery. (Dkt. No. 18-2 at 14). And she offers no evidence to suggest she could have avoided medical leave but for PHI's alleged misrepresentation about her FMLA eligibility. Because Ramirez has failed to raise a factual dispute about her reliance on PHI's

misrepresentation, PHI is not estopped from claiming FMLA ineligibility. *See Dennis*, 2017 WL 2470874, at *4 (rejecting plaintiff's estoppel argument when "the surgery was necessary and would have been done regardless of any misrepresentation"). Accordingly, the Court finds that PHI is entitled to judgment as a matter of law on Ramirez's FMLA claim.

### B.    ADA DISABILITY DISCRIMINATION

Next, PHI argues that it is entitled to summary judgment on Ramirez's ADA claim as well. (Dkt. No. 18 at 16–20). Congress passed the ADA with the "specific mandate of eliminating discrimination against individuals with disabilities." *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004) (citing 42 U.S.C. § 12101(b)(1)). Plaintiffs seeking relief under the ADA may either present direct evidence of discrimination or use circumstantial evidence and proceed under the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Here, Ramirez relies on circumstantial evidence.

Under *McDonnell Douglas*, plaintiffs must first establish a prima facie case of discrimination. *Melton*, 391 F.3d at 671. If the plaintiff does, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for its actions. *LHC Grp.*, 773 F.3d at 694, 701. The burden then shifts back to the plaintiff to prove that the employer's explanation was a pretext for discrimination. *Id.* at 694, 702.

PHI argues that Ramirez's disability-discrimination claim fails as a matter of law for two reasons. First, PHI contends that Ramirez cannot make a prima facie case of

discrimination.  (Dkt. No. 18 at 6).  And second, even if she could, PHI insists that Ramirez

cannot show pretext.  (*Id.*).  The Court addresses each argument in turn.

### 1.   Ramirez's Prima Facie Case of Discrimination

First, Ramirez must establish a prima facie case of discrimination.  *Melton*, 391 F.3d

at 671.  To do so, she must show that she (1) has a disability; (2) was qualified for the

position; and (3) suffered an adverse employment action because of her disability.  *Talk*

*v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999) (per curiam) (citing 42 U.S.C.

§ 12112(a)).

PHI does not dispute the first two elements of Ramirez's prima facie case.  (Dkt.

No. 18 at 17).  It is also undisputed that Ramirez "suffered an adverse employment

action—namely, termination."  *LHC Grp.*, 773 F.3d at 700 (citing 42 U.S.C. § 12112(a) ("No

covered entity shall discriminate against a qualified individual on the basis of disability

in regard to . . . discharge of employees . . . .")).  PHI still argues, however, that Ramirez

cannot establish her prima facie case because her proffered comparators are not similarly

situated to her.  (Dkt. No. 18 at 17).

As a threshold matter, the Court notes that Ramirez is not *required* to show that

PHI treated similarly situated employees better than her to prove her prima facie case.

*See LHC Grp.*, 773 F.3d at 695–96.  In *EEOC v. LHC Group*, the Fifth Circuit discussed how

three lines of precedent used different requirements for establishing a causal nexus in a

disability-discrimination case.  *Id.* at 695.  From those options, the Fifth Circuit chose what

it termed the "*Zenor* formulation," which requires a plaintiff to prove only "'(1) that he

has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an

adverse employment decision on account of his disability.'" *Id.* at 695, 697 (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). As for the other line of cases requiring a plaintiff to provide comparator evidence, the Fifth Circuit explained that this was merely "one possible way to prove [a] nexus between the employee's disability and her termination." *Id.* at 696.

Since *LHC Group*, "multiple published Fifth Circuit cases analyzing disability discrimination claims have articulated a prima facie framework that does not require (or even reference) comparator evidence." *EEOC v. Mod. Grp., Ltd.*, 725 F.Supp.3d 577, 631–32 (E.D. Tex. 2024) (collecting cases). And while "other cases since *LHC Grp., Inc.*, have relied on a prima facie framework that includes comparator evidence, none of these cases explicitly state that the plaintiff must produce such evidence." *Id.* at 632 (collecting cases). So, in the Fifth Circuit, "a plaintiff 'does not have to provide evidence of a comparator to establish a prima facie case of disability discrimination under the ADA.'" *Id.* (quoting *Iqbal v. City of Pasadena*, 542 F.Supp.3d 566, 571 n.2 (S.D. Tex. 2021)).

Instead, a plaintiff need only show that the employer (1) discriminated against the employee (2) *because of* the employee's disability. *See LHC Grp.*, 773 F.3d at 697 (quoting *Zenor*, 176 F.3d at 853). This "because-of" language means that Ramirez "must demonstrate a causal connection between h[er] disability and h[er] discharge." *Trcka v. Atzenhoffer Chevrolet Co.*, No. 6:21-CV-00035, 2023 WL 2672818, at *4 (S.D. Tex. Mar. 27, 2023) (citing *Zenor*, 176 F.3d at 853–54). Proof of a "causal connection" is central to employment litigation, and employees may establish this connection through several theories, including—but not limited to—disparate treatment. Gerald E. Rosen et al.,

13

Rutter Group Practice Guide: Federal Employment Litigation §§ 2:345, 4:783 (July 2024 update).

However, a plaintiff "may satisfy th[is] causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (per curiam), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc)). "Such temporal proximity must generally be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (per curiam)). For example, "'a time lapse of up to four months' may be sufficiently close," *id.* (quoting *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001)), but a five-month lapse may not be absent other evidence of retaliation, *id.* (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). This timeline may be measured by using the date that the employer was notified of a disability and the date that the employee was fired. *See, e.g.*, *Trcka*, 2023 WL 2672818, at *4 (finding the causal-connection element satisfied when an employee was fired within one week of notifying a manager of his cancer diagnosis and treatment).

In this case, PHI hired Ramirez in February 2017, knowing that she suffered from RSD. (Dkt. No. 18-2 at 5, 9). Ramirez also returned from leave for her disability in January 2020. (Dkt. No. 18-15 at 3). Yet PHI fired Ramirez on September 29, 2020, (Dkt. No. 18-13 at 2), which is over three years after PHI learned of her disability and over eight months after Ramirez took leave to undergo surgery for her disability. The summary-

judgment evidence shows that Ramirez has not proven a sufficiently close temporal proximity between her protected activity and her termination.

Ramirez has also failed to provide sufficient comparator evidence.   True, comparator evidence is not necessary for a prima facie  disability-discrimination case, but it is still "one possible way to prove nexus between the employee's disability and her termination."  *LHC Grp.*, 773 F.3d at 696.  Specifically, "to prove nexus between the employee's disability and [their] termination," a plaintiff may show that they were "replaced by or treated less favorably than non-disabled employees."  *Id.* at 695–96.

If a plaintiff offers comparators to establish their discrimination claim, the employees must be similarly situated in *all relevant respects* to the plaintiff.  For example, in *Alkhawaldeh v. Dow Chemical Co.*, the plaintiff's failure to identify at least one non-Jordanian Muslim Arab who had received the lowest job rating and had completed a performance improvement plan meant that the plaintiff had failed to identify a similarly situated comparator.  851 F.3d 422, 426–27 (5th Cir. 2017).  Likewise, in *Saketkoo v. Administrators of the Tulane Educational Fund*, a female plaintiff's comparators were not similarly situated because she "failed to present evidence that any male physicians shared her research responsibilities, section assignments, historical performances, or other attributes that would render them similarly situated."  31 F.4th 990, 998 (5th Cir. 2022).

Thus, a plaintiff must offer comparators showing "that the employment actions at issue were taken 'under nearly identical circumstances.'"  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir.

1991)).  Nearly identical circumstances exist "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Id.* (internal citations omitted).  "And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."  *Id.* (quoting *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004)).  "Or put another way, the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer."  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Ramirez argues that two similarly situated, nondisabled employees—Christopher Pena and "B.J."—engaged in comparable misconduct but were treated more favorably.[2] (*See* Dkt. No. 21 at 12–15).  According to Ramirez, both comparators were like Ramirez in that they held flight-paramedic roles with similar duties and demonstrated poor performance and unprofessional behavior.  (*Id.* at 13).  Pena, for example, had significant charting issues but was not issued a Corrective Action Form.  (*Id.*) (citing Dkt. No. 21-6 at

---

[2]    PHI mentions three other employees that Ramirez may have previously tried to paint as comparators.  (Dkt. No. 18 at 18).  Of course, PHI argues that these three, like Pena and B.J., are *not* comparators.  (*Id.*).  Ramirez's Response makes no mention of any comparator other than Pena or B.J.  (*See* Dkt. No. 21 at 12–15).  Thus, any arguments about the other three are waived.  *See Hensley v. Wal-Mart Stores Inc.*, 290 F.App'x 742, 743-44 (5th Cir. 2008) (per curiam) ("This court has consistently held that arguments not raised in response to a motion for summary judgment are waived and cannot be considered on appeal.").

2).  And B.J. received only a verbal warning for serious violations, including leaving a narcotics kit unsecured and disclosing confidential information.  (*Id.* at 13–14) (citing Dkt. No. 21-7 at 2).  Significantly, unlike Ramirez, neither comparator received a "Final Written Warning" or termination.  (*Id.* at 13).

In response, PHI insists that Ramirez's proffered comparators are not similarly situated to Ramirez.  (Dkt. No. 26 at 5–7).  For starters, they had different supervisors. Whereas Moon supervised Ramirez, (Dkt. No. 18-2 at 17); (Dkt. No. 18-7 at 2), Jeremy Thomason supervised Pena[3] and Traci Fox supervised B.J., (Dkt. No. 21-7 at 2).  PHI also notes that Pena was coached for charting issues in 2017 but demonstrated no further problems and followed protocol when requesting extensions.  (Dkt. No. 26 at 5).  Unlike Ramirez, he did not engage in unprofessional, fraudulent, or dishonest conduct, and his role in delayed charting was secondary to Ramirez's primary responsibility.  (*Id.* at 5–6).

PHI argues that B.J. also lacks a comparable performance history and was disciplined for less severe and less frequent violations.  (*Id.* at 6).  PHI's discipline policy allows for deviations based on the severity of conduct.  (*Id.*).  Unlike Ramirez, B.J. was disciplined only once, acknowledged his wrongdoing, and had no more issues.  (*Id.* at 7). By contrast, Ramirez's final written warning addressed multiple violations, including intentional dishonesty.  (*Id.*).  PHI further argues that Ramirez has not provided evidence

---

[3]     Neither Party provides evidence on this point, but both seem to agree that Pena had a different supervisor than Ramirez.  (*See* Dkt. No. 21 at 14) ("Defendant may argue that B.J. and Pena received disparate treatment because they did not have the same supervisor as Ramirez . . . "); (Dkt. No. 26 at 5) ("Unlike Ramirez, Pena had no charting issues after the counseling in 2017; and his supervisor at that time was Jeremy Thomason.").

that HR reviewed B.J.'s discipline, making the decision-makers and circumstances dissimilar. (*Id.* at 6).

The Court agrees with PHI that neither Pena nor B.J. are suitable comparators to establish a causal link between Ramirez's termination and her disability. While there are some similarities, the differences are significant enough to preclude them from establishing that Ramirez's termination was because of her disability. First, Pena and B.J. had different supervisors than Ramirez, a distinction that, by itself, is fatal. *Lee*, 574 F.3d at 260. Second, unlike Ramirez, Pena had no further disciplinary incidents after his one warning, and B.J. apologized for his misconduct and accepted full responsibility for his actions. (Dkt. No. 21-8 at 2). Third, Ramirez was disciplined more frequently than Pena or B.J. (*See* Dkt. No. 18-15 at 3–4) (showing Ramirez was disciplined four separate times). Finally, while Pena or B.J. may have been disciplined for some of the same conduct as Ramirez, the actions that ultimately led to Ramirez's termination were unique to her. For instance, Ramirez admittedly misled PHI about the data-deletion incident when she conceded that her previous emails to PHI about the data-deletion incidence were incorrect. (Dkt. No. 18-2 at 25). Further, according to PHI's termination letter, Ramirez was fired for attempting to locate a co-worker's address after he reported the data-deletion incident and for pursuing a "vendetta against" her supervisor, (Dkt. No. 18-13 at 2)—retaliatory behavior not exhibited by either Pena or B.J.

In short, Ramirez's disruptive conduct at PHI was more frequent and severe than Pena's or B.J.'s. Ramirez's conduct is therefore not comparable—let alone "nearly identical"—to these two. *See Lee*, 574 F.3d at 260. And because this difference in behavior

"accounts for the difference in treatment," Ramirez's comparators do not reflect discrimination by PHI. *Wallace*, 271 F.3d at 221. Without successful comparator evidence or any other evidence linking Ramirez's termination to her disability, Ramirez has failed to make a prima facia showing of disability discrimination.

* * *

The Court recognizes that the burden on plaintiffs at the prima facie stage of the *McDonnell Douglas* analysis is "'not onerous.'" *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228, 135 S.Ct. 1338, 1354, 191 L.Ed.2d 279 (2015) (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1089, 67 L.Ed.2d 207 (1981)); *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir. 1992) ("[I]t is relatively easy . . . for a plaintiff to establish a prima facie case . . .'" (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir. 1991))); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985) ("Generally, to establish a prima facie case, a plaintiff need only make a very minimal showing."), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Therefore, the Court will alternatively assume that Ramirez established a prima facie case for disability discrimination.

### 2.    PHI's Legitimate, Nondiscriminatory Reasons

Assuming that Ramirez established a prima facie case, the burden shifts to PHI to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See LHC Grp.*, 773 F.3d at 694, 701.

In its termination letter to Ramirez, PHI explained that it was firing Ramirez for "unprofessional conduct and unacceptable job performance." (Dkt. No. 18-13 at 2). PHI asserted that Ramirez "engaged in dishonest and fraudulent conduct by intentionally deleting patient-related data" and later "increased and intensified [her] unprofessional conduct" by "intimidat[ing] the coworker who reported [her] misconduct" with a threat to sue that coworker for defamation. (*Id.*). PHI also alleged that Ramirez "embarked on a vendetta against [her] supervisor who recently critiqued [her] poor job performance" and criticized Ramirez "for not completing [her] patient charts on a timely basis." (*Id.*).

"Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law." *LHC Grp.*, 773 F.3d at 701–02. And the Fifth Circuit has "repeatedly recognized that poor job performance is a legitimate, nondiscriminatory reason for firing an employee." *Benjamin v. Felder Servs., LLC*, 753 F.App'x 298, 302 (5th Cir. 2018) (per curiam) (first citing *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005); and then citing *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001)).

The reasons articulated by PHI for firing Ramirez are thus legitimate, nondiscriminatory reasons. *See LHC Grp.*, 773 F.3d at 701–02.

### 3.    Pretext for Disability Discrimination

Because PHI has articulated legitimate, nondiscriminatory reasons for firing Ramirez, the burden shifts back to Ramirez to show that PHI's reasons were a pretext for disability discrimination. *See id.* at 649, 702. To meet her burden, Ramirez "must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for

termination is pretextual." *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th

Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)).

"In pretext cases, it is not enough that the [employer] was wrong about the underlying

facts that motivated the adverse employment action.  The only question is whether the

employer had a good-faith belief that the facts that motivated the adverse action were

true." *Lucas v. T-Mobile USA, Inc.*, 217 F.Supp.3d 951, 957 (S.D. Tex. 2016) (citing *Jackson

v. Cal–W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)).  "Pretext is established 'either

through evidence of disparate treatment or by showing that the employer's proffered

explanation is false or "unworthy of credence.'" *Delaval*, 824 F.3d at 480 (quoting *Laxton

v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).  "An explanation is false or unworthy of

credence if it is not the real reason for the adverse employment action." *Laxton,* 333 F.3d

at 578.

Ramirez argues that PHI's reasons for firing her were pretextual for four

reasons: (1) she received her first formal discipline after allegedly needing an

accommodation; (2) Moon influenced the decision to fire her; (3) the investigation of

Ramirez's complaint was "wholly one-sided"; and (4) she "is able to cast doubt on" PHI's

allegations of "individual performance issues and . . . unprofessional conduct." (*See* Dkt.

No. 21 at 15–22).

Ramirez's arguments fail.  First, the timing between her first formal discipline and

her request for time off is not as suspicious as Ramirez suggests.  Ramirez returned from

her third medical leave in January 2020, (Dkt. No. 18-15 at 3), but PHI issued a final

written warning to Ramirez after she deleted patient data seven months later, in August

21

2020, (Dkt. No. 18-8).  And while Ramirez suggests that this final written warning "bypassed all progressive discipline," (Dkt. No. 21 at 16), that is incorrect.  The final warning came after Moon had completed a "coaching" form that cited several deficiencies in Ramirez's job performance.  (Dkt. No. 18-2 at 18); (*see also* Dkt. No. 18-8 at 2).

Second, Ramirez's argument that Moon influenced HR's decision to fire her rests on the premise that Moon discriminated against Ramirez and tainted the decision to fire her.  (*See* Dkt. No. 21 at 17).  But Ramirez did not provide evidence for that premise.  She failed to provide summary-judgment evidence showing that Moon discriminated against her, *see supra* Section III(B)(1), and she failed to address this premise at all in the pretext section of her brief, (*see* Dkt. No. 21 at 16–18).  Her self-serving, conclusory assertion that Moon discriminated against her is insufficient to create a genuine issue of material fact on pretext.  *See EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984) ("[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels [s]he has been discriminated against." (quoting *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)).

Third, Ramirez failed to show that the investigation was "wholly one-sided." (Dkt. No. 21 at 19–20).  The investigation report spans thirteen pages and shows that PHI interviewed the relevant individuals involved in the incidents, including Ramirez, Moon, and Malik.  (Dkt. No. 18-16 at 2).  The report also includes detailed allegations from these witnesses, a lengthy list of questions the investigator asked the witnesses, and full

explanations from both sides.  (*Id.* at 2–8).  The investigation report even attaches exhibits that weigh in favor of and against Ramirez.  (*Id.* at 10–14).

Still, Ramirez argues that the investigation was inadequate because PHI did not interview Charlann Staab, who was responsible for reviewing whether charts were compliant, or Staab's supervisor, Karen Divver.  (Dkt. No. 21 at 19–20).  And Ramirez relies on *Bautista v. Quest Diagnostics Clinical Laboratories, Inc.*, No. 4:11-CV-04162, 2013 WL 4647677 (S.D. Tex. Aug. 30, 2013), for this argument.  (*See id.* at 15–16, 19–20).

But the fact that PHI failed to interview every possible witness does not establish pretext.  *See, e.g., Jackson v. Blockbuster, Inc.*, No. 4:09-CV-00119, 2010 WL 2268086, at *4 (E.D. Tex. June 4, 2010) (concluding that "the fact that [the defendant] did not interview [a potential witness] does not establish pretext . . . ."); *Gallow v. Autozone, Inc.*, 952 F.Supp. 441, 448 n.6 (S.D. Tex. 1996) ("[T]he failure to investigate (while possibly a poor business practice) does not establish that Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination.").

Moreover, *Bautista* is distinguishable.  There, the employer did not allow the plaintiff to explain her side of the story or otherwise include plaintiff's explanation in the investigation report.  *Bautista*, 2013 WL 4647677, at *6.  That is not the case here.  PHI's investigation report includes Ramirez's specific responses to various interview questions and her lengthy email report to HR that explains her version of the relevant events.  (Dkt. No. 18-16 at 2–8, 10–12).  The investigation was not one-sided.

Finally, Ramirez's attempt to "cast doubt on the individual performance issues and allegations of unprofessional conduct" also fails to establish pretext.  (Dkt. No. 21 at

20–22).  Showing that PHI made the wrong decision is not enough to show pretext; instead, it is PHI's *belief* about whether Ramirez made mistakes that is relevant for pretext purposes.  "Management does not have to make proper decisions, only non-discriminatory ones."  *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).  "Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers."  *Id.* (internal quotation omitted).  And "[t]he issue at the pretext stage is not whether the [employer's] reason was actually correct or fair, but whether the decisionmakers honestly believed the reason."  *Harville v. City of Houston*, 945 F.3d 870, 877 (5th Cir. 2019) (citation omitted).  Likewise, "[m]erely disputing [the employer's] assessment of [an employee's] performance will not create an issue of fact."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002).  Indeed, "it is not enough that the [employer] was wrong about the underlying facts that motivated the adverse employment action.  The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true."  *Lucas*, 217 F.Supp.3d at 957.  Here, Ramirez has failed to provide summary-judgment evidence showing that PHI did not honestly believe the reasons proffered for terminating Ramirez.

In sum, Ramirez has failed to show that a genuine issue of material fact exists on whether PHI's reasons for firing her were pretextual.  Accordingly, Ramirez's disability-discrimination claim fails for this reason as well.

24

C.    **ADA RETALIATION**

Finally, PHI moves for summary judgment on Ramirez's ADA retaliation claim. (Dkt. No. 18 at 20–22). The ADA prohibits an employer from retaliating against an employee who seeks to exercise their rights under the ADA. *See* 42 U.S.C. § 12203(a). Employees asserting retaliation claims under the ADA must first make a prima facie case by showing that (1) they engaged in an activity protected by the ADA; (2) they suffered an adverse employment action; and (3) there is a causal connection between the protected act and the adverse action. *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999). "If the employee establishes a prima facie case of retaliation, the employer must come forward with a legitimate, nondiscriminatory reason for its action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). "If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation." *Id.* "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman*, 179 F.3d at 301.

The Parties dispute only whether Ramirez has demonstrated pretext. (*See* Dkt. No. 18 at 21). And rightfully so. After all, PHI terminated Ramirez's employment less than a month after she complained of discrimination to PHI human resources—an ADA-protected activity. (*Id.*); *see January v. City of Huntsville,* 74 F.4th 646, 653 (5th Cir. 2023) (holding that a six-week difference between protected activity and adverse employment event "does the trick" to show causation). And Ramirez does not contest that PHI articulated legitimate, nondiscriminatory reasons for her firing. Therefore, the Court's analysis begins by considering whether Ramirez has shown that PHI's two reasons for

firing her—(1) Ramirez's threats to sue Bryan Jackson and (2) her vendetta against Moon—are mere pretexts for retaliation.

To show pretext, Ramirez must show that her protected act was a "but for" cause of her termination. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022). Ramirez can do so by "'produc[ing] substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" *Burton*, 798 F.3d at 233 (quoting *Laxton*, 333 F.3d at 578). This inquiry "requires that the plaintiff show that protected conduct was *the* reason for the adverse action." *Owens*, 33 F.4th at 835 (emphasis in original). "'In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.'" *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). To satisfy this burden, a plaintiff "may combine 'suspicious timing with other significant evidence of pretext' to survive summary judgment." *Id.* (quoting *Saketkoo*, 31 F.4th at 1003. And the plaintiff's evidence must be "substantial," which means that it "is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Burton*, 798 F.3d at 233. A plaintiff must also rebut "each discrete reason proffered" by the employer. *Id.*

Ramirez has not produced summary-judgment evidence demonstrating a fact issue as to whether PHI's reasons are a pretext for retaliation. First, Ramirez provides no evidence to show that PHI's proffered reasons were false. She failed to provide evidence

showing that she did not threaten to sue Jackson. (Dkt. No. 21 at 22–24). And she fails to controvert the evidence indicating that she had a vendetta against Moon. (*See id.*).

Second, Ramirez fails to produce summary-judgment evidence showing that her protected activity of reporting the alleged harassment by Moon was *a* reason—much less *the* reason—she was fired. When it comes to showing pretext, "[m]otive is the issue." *Little*, 924 F.2d at 97. And here, the summary-judgment record lacks any indication of a discriminatory or retaliatory motive by anyone at PHI. The record, instead, suggests the opposite. In her three years of employment, Ramirez requested and received three medical leaves. (Dkt. No. 18-15 at 2–3). And in those three years, Ramirez was disciplined three times for failing to complete her patient charts on time. (*Id.* at 3–4). Ramirez also earned a final written warning for dishonesty regarding the data-deletion incident. (*Id.*). Moreover, when Ramirez accused Moon of discrimination, PHI did not ignore it; PHI investigated the incident, taking statements from both sides. (*Id.* at 4). Malik reported to investigators that Ramirez was "going to get" Moon and was searching for "dirt" on her. (*Id.*). Investigators also received reports that Ramirez was planning to find out where Jackson lived and sue him for slander. (*Id.*).

In sum, the record shows that Ramirez has failed to provide competent summary-judgment evidence demonstrating that there is a fact issue as to whether PHI would have fired Ramirez for this kind of behavior absent Ramirez's report of harassment. And with nothing more to suggest that PHI's reasons are pretextual, Ramirez's ADA retaliation claim fails.

## IV.    CONCLUSION

Each of Ramirez's three claims fails as a matter of law.  First, Ramirez cannot bring an FMLA claim because she is not an eligible employee, and PHI is not equitably estopped from making this argument.  Second, Ramirez's ADA discrimination claim fails because she has failed to create a fact issue as to whether PHI fired her because of her disability or that PHI's legitimate reasons for her termination were pretextual.  Finally, Ramirez's ADA retaliation claim fails because she fails to create a genuine issue of material fact as to whether PHI's reasons for firing her were a pretext for unlawful retaliation.

For these reasons, the Court **GRANTS** PHI's Motion for Summary Judgment, (Dkt. No. 18).  Ramirez's case is **DISMISSED WITH PREJUDICE**.

It is SO ORDERED.

Signed on January 13, 2025.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**